UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE PERUN,<br><br>    Plaintiff,<br><br>    v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC, et al.,<br><br>    Defendants. | Case No. 21-cv-03888-RS<br><br>**ORDER DENYING TEMPORARY RESTRAINING ORDER AND GRANTING MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiff Steve Perun seeks a Temporary Restraining Order ("TRO") to prevent the foreclosure of his home, scheduled for tomorrow. Perun did not prevail on a Motion to Dismiss ("MTD") on all his claims, and his subsequent amended Complaint does not help his case sufficiently to change the outcome. Thus, Carrington's current Motion to Dismiss is granted, and consequently, because Perun cannot show he is likely to succeed on the merits, his application for a TRO is denied.

## II. BACKGROUND

Perun fell behind on his mortgage payments, and the lenders sent a notice of Default in January 2021. He applied for a modification, and the lenders aver they sent him a letter on February 10, 2021, notifying him that his application was complete, as required by 12 C.F.R. § 1024.41(b). Next, the lenders aver they sent a letter effectively denying his application on February 26, 2021: "effectively" because the letter did give him an option of a home liquidation

sale, which is considered a loan modification option. He claims he never received that letter, and they must not have sent it, in violation of § 1024.41(c).[1] A copy of the letter the lenders prepared was introduced as part of their earlier MTD, which was granted because it was implausible the lenders prepared the letter and did not send it. Even if they had not sent it, violations of the relevant statute (12 C.F.R. § 1024.41(c)) require actual damages to be actionable, and Perun cannot show actual damages because of the subsequent modification offers, among other reasons. *See* Dkt. No. 32, Order Granting Mot. to Dismiss, at 6 n.2.

## III. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, (2007)). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus, dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[1] At times Perun also claims the lenders violated § 1024.41(b), which requires notification when the lender receives an application and determines whether it is complete or not. *See, e.g.*, Dkt. No. 48, Application for TRO, at 12. Here, that was the February 10 letter, which Perun has consistently acknowledged receiving. *See* Dkt. No. 48-1, Declaration of Perun, at 3; Dkt. No. 23, First Amended Complaint, at Para. 21. Thus, his references to violations of subsection (b) will be disregarded as error, as the clear import of his numerous acknowledgements of receiving the February 10 letter is he is not in fact alleging the lenders violated this section as well.

A TRO may be granted upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order, as a form of preliminary injunctive relief, is to preserve the status quo and prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). A request for a TRO is evaluated by the same factors that generally apply to a preliminary injunction, *see Stuhlbarg Int'l. Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001), and as a form of preliminary injunctive relief, a TRO is an "extraordinary remedy" that is "never granted as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, the moving party bears the burden of demonstrating that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, if the moving party can demonstrate the requisite likelihood of irreparable harm, and show that an injunction is in the public interest, a preliminary injunction may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*).

## IV. DISCUSSION

### A. Motion to Dismiss

Carrington's MTD is granted. Perun attempts to show he can succeed where he previously failed by noting it is conceivable the lenders prepared the February 26 denial letter but did not send it because there were issues with the application, even though it had been certified as complete.[2] He adds to his argument that the lenders asked for supplemental documents in March and April. The much more plausible explanation for those communications is that they related to

---

[2] The lenders' request that the letter be incorporated by reference is granted, for the same reasons it was granted before. *See* Dkt. No. 32, Order Granting Mot. to Dismiss, at 4-5.

the subsequent modification offers. Indeed, the lenders had already deemed his application complete in the February 10 letter. It would be nonsensical for the lenders to come to that conclusion, prepare a letter denying the application, and then hold the letter while they asked for more documents. This fatally undercuts all of his claims, and entitles the lenders once more to dismissal.

Perun also argues the subsequent communications in March and April mean even if the lenders sent the letter, they were "dual-tracking" him. Yet, the subsequent communications do not constitute the start of a foreclosure process sufficient to qualify as dual-tracking. Perun also attempts to argue the loan modification offers were in bad faith, and did not constitute a meaningful opportunity to obtain loss mitigation options. The modification offer required him to pay $16,000 before reducing the payments on $171,437.90 in arrearages (on a $1,499,250 mortgage). As such, it represented a meaningful loss mitigation option. Recall that a home liquidation sale is also considered a modification option, which is practically equivalent to the foreclosure Perun seeks to avoid here (the main difference being less impact on one's credit score). Plaintiff does not have a right to a particular result. *See* Civil Code § 2923.4.

Perun is not likely to be able to demonstrate a violation of § 1024.41 – all of those claims depend on his not having received the letter, which he almost certainly would not be able to show. Beyond that, he also would not be able to show any damages. *See* Dkt. No. 32, Order Granting Mot. to Dismiss, at 6 n.2. His other claims are denied for the same reasons explained in the earlier order – nothing in the new complaint or application for TRO changes the analysis of those claims.

### B. Application for a TRO

Consequently, Perun's application for a TRO must be denied because he cannot show one of the required elements: likelihood of success on the merits. In fact, he does not even address certain of his claims in the TRO. While he can establish he is likely to suffer irreparable harm in the absence of relief the test for a TRO starts with a list of required elements, per *Winter*. 555 U.S. at 20. Even under the sliding scale approach Perun must be able to show there are serious questions going to the merits. This he cannot do. As explained above in granting the MTD, his

request for a TRO must fail as well.

## V. CONCLUSION

For the reasons set forth above, the motion to dismiss the Second Amended Complaint is granted and the application for a TRO is denied. Leave to amend is denied. Perun has had several attempts to amend, but without success. Also, the case will soon be largely or entirely mooted by the foreclosure. Further amendment would be futile. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

**IT IS SO ORDERED**.

Dated: December 7, 2021

_____
RICHARD SEEBORG
Chief United States District Judge